FILED

AUG 24 2023

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY_____
                    DEP CLK

# United States District Court
### Eastern District of North Carolina
### Western Division

Case No. _5:23-CT- 3243-BO_

(To be filled out by Clerk's Office only)

_Kenneth R. Capel_

_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

Inmate Number _1558805_

-against-

_Gary Junker_

_Dr. Aurthur Campbell_

_Debra Fitzgerald_

_Valerie Langley_

*(In the space above enter the full names of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section IV. Do not include addresses here.)*

# COMPLAINT

*(Pro Se Prisoner)*

Jury Demand?
☒ Yes
☐ No

---

## **NOTICE**

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

---

## I. COMPLAINT

*Indicate below the federal legal basis for your claim, if known. This form is designed primarily for pro se prisoners challenging the constitutionality of their conditions of confinement, claims which are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "Bivens" action (against federal defendants).*

[X] 42 U.S.C. § 1983 (state, county, or municipal defendants)

[ ] Action under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) (federal defendants)

[ ] Action under Federal Tort Claims Act (United States is the proper defendant; must have presented claim in writing to the appropriate Federal agency and received a notice of final denial of the claim pursuant to 28 U.S.C. § 2401(b))

## II. PLAINTIFF INFORMATION

*Kenneth R. Creel*
Name

*1558805*
Prisoner ID #

*Pender Correctional Institute*
Place of Detention

*P.O. Box 1058   906 Penderlea Hwy*
Institutional Address

*Burgaw*                     *NC*                *28425*
City                          State              Zip Code

## III. PRISONER STATUS

*Indicate whether you are a prisoner or other confined person as follows:*

[ ] Pretrial detainee  [ ] State  [ ] Federal
[ ] Civilly committed detainee
[ ] Immigration detainee
[X] Convicted and sentenced state prisoner
[ ] Convicted and sentenced federal prisoner

## IV. DEFENDANT(S) INFORMATION

*Please list the following information for each defendant. If the correct information is not provided, it could result in the delay or prevention of service. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.*

Defendant 1: Gary Junker
Name

Comp. Health Services, Deputy Secretary
Current Job Title

Unknown
Current Work Address

_____
City                State              Zip Code

Capacity in which being sued: ☐ Individual ☐ Official ☒ Both

Defendant 2: Dr. Aurthur Campbell
Name

Medical Services, Chief Medical Officer
Current Job Title

Unknown
Current Work Address

_____
City                State              Zip Code

Capacity in which being sued: ☐ Individual ☐ Official ☒ Both

**Defendant(s) Continued**

Defendant 3:     _Debra Fitzgerald_
Name

_Pharmacy Director_
Current Job Title

_Unknown_
Current Work Address

_____
City                    State              Zip Code

Capacity in which being sued: ☐ Individual ☐ Official ☒ Both

Defendant 4:     _Valerie Langley_
Name

_Chief Nursing Officer_
Current Job Title

_Unknown_
Current Work Address

_____
City                    State              Zip Code

Capacity in which being sued: ☐ Individual ☐ Official ☒ Both

Attachment A: Extended list of Defendants

- John Doe 1 – represents past occupant of Healthcare
  Address Unknown – Administrator's office
  – currently vacant

- Mr. Jones – Warden Pender Correctional Institute
  Address: P.O. Box 1058, Burgaw, NC 28425

- Mr. Herring – Warden Maury Correctional Institute
  Address Unknown

- Dr. Lewis – Medical Department Supervisor (PCI)
  Address: P.O. Box 1058 Burgaw, NC 28425

- Dr. Faulcon – Medical Department Supervisor (MCI)
  Address: Unknown

- Ms. Webb – Lead Nurse (PCI)
  Address: P.O. Box 1058 Burgaw, NC 28425

- Jane Doe 2 – Represents Lead Nurse (MCI)
  Address: Unknown

- John and Jane Does 3-4 – Represent past office holders
  Address: Unknown      – from above (PCI) and (MCI)

Attachment A Cont.

- John and Jane Does 10-14 — Represents previous
  Address: Unknown       = office holders; Upper
                         - level Officials

- John and Jane Does 15-25 = Represents line officials
  Address: P.O.Box 1058       — and pharmacist (PCI)
  Burgew, NC 28425

- John and Jane Does 26-35 — Represents line officials
  Address: unknown         and pharmacist (MCI)

- John Doe 36 — Represents individual nurse
  Add: unknown — from PCI

## V. STATEMENT OF CLAIM

Place(s) of occurrence: _Pender Corrections ( Inst, Maury Correctional Inst._

Date(s) of occurrence: _September 1, 2020 through August 31, 2023_

State which of your federal constitutional or federal statutory rights have been violated:

_8th Amendment Right to adequate medical care, 8th Amendment
Right to adequate conditions of confinement, ADA Rights against
Descrimination_

State here briefly the FACTS that support your case. Describe how each defendant was personally involved in the alleged wrongful actions, state whether you were physically injured as a result of those actions, and if so, state your injury and what medical attention was provided to you.

FACTS:

_1, Plaintiff makes this complaint in regards to fail-
ures of North Carolina Deptartment of Adult Correct-
ions (NCDAC), formerly known as Department of
Public Safety(DPS), Officials in providing adequate
medical care covering the entire 3 year period
of September1, 2020 through August 31 of 2023.
The allegations enumerated in this complaint are
continuous, ongoing, systemic, and involve many
NCDAC officials who occupy many different posi-
tions with many different responsibilities._

> Who did what to you?

_Acting in common, and through poor leadership,
supervision, and possibly incompetence for their
positions, the defendant officials named in this
complaint have been allowed to become, enmasse,
deliberately indifferent to plaintiff Reed's serious
medical needs, and have allowed unsafe conditions
to arise and continue that pose an unreasonable_

risk of serious damage to plaintiff's future health as well as de facto damage to plaintiffs current health. Plaintiff alleges these risks to be so grave as to violate contemporary standards of decency at both Pender Correctional Institute (PCI) and Maury Correctional Institute (MCI), and plaintiff believes statewide,

**What happened to you?**

## UPPER LEVEL OFFICIALS

2, Defendants, Gary Junker, Dr. Aurthur Campbel, John Doe 1, Debra Fitzgerald, and Valerie Langley have failed to prescribe and maintain standards for health services to prisoners commensurate with current standards of individualized professional medical care, pursuant to N.C.G.S. § 148-19 (1991), the 8th Amendment to the U.S. Constitution and Article 1, section 27 of the N.C. Constitution. Further, the defendants named above have failed to seek the cooperation of public and private agencies, institutions, officials and individuals in the development of adequate health services to prisoners required by N.C. State law. These failures are long-standing, pervasive, systemic, and also include the failure to comply with doctor or specialists' orders in regard to supplying plaintiff with prescribed medications, maintaining sufficient supplies of said medications, to ensure they are continuously available as disruptions in supply of certain medications can create serious life-threatening consequences. These Defendant Officials are responsible for creating and maintaining a medical formulary (and pharmaceutical) in response to

**When did it happen to you?**

**Where did it happen to you?**

plaintiff's "chronic" medical needs. "Chronic" is defined as medical conditions that affect a person's health for a long period of time (6 months or longer) and requires ongoing medical attention. Prescribed medications have been often changed in dosage or substituted with different, though similar medications. Plaintiff believes all of the issues related to medications may be, in part, an effort at cost savings on the part of NC DAC. At any rate, inconsequential logistical concerns that might be no more than matters of convenience should not have higher priority than plaintiff's serious medical needs. These medication issues are clear interference with doctors' prescribed treatments for Plaintiff Creel. Since the onset of Covid-19, circa 2020, these defendant officials have been unable to maintain necessary staffing levels. Among other issues, due to lack of staff, appointments to outside medical facilities and specialists are often delayed or cancelled entirely until a complaint (grievance) is made. Plaintiff's requested entry into the "ADA" program was initially denied, until shortly thereafter plaintiff was hospitalized, thereafter his application to the "ADA" program was accepted. Plaintiff was closely qualified for the program upon his first application. Medical equipment is not properly maintained. Other issues include forcing plaintiff to wait out of doors and in long lines for his medications during inclement weather, raincoats have been denied, and temperatures (Please refer to Attachment B for continuation)

Page 7 of 10

Attachment B

at times reach the low-teens. Thus far this year, in a medical dormitory where many ~~prisonces~~ 'prisoners' health requires air conditioning, the air conditioning system has not worked correctly for more than one day at a time, with several days intervening. None of these deficiencies would be encountered outside the prison environment and plaintiff alleges they constitute "corrective injection" on the part of the above named defendants, and is closely likely to make plaintiff's medical problems worse or result in a lifelong handicap or permanent loss — plaintiff alleges that in fact, they already have.

3, Plaintiff alleges that defendant officials Gary Junker, Dr. Aurthur Campbell, John Doe 1, Debra Fitzgerald, and Valerie Langley`s operation of the NCDAC medical system has been grossly incompetent and inadequate as to shock the conscience or be intolerable to fundamental fairness by the public and legislative officials at large, and that even an ordinary untrained lay person would recognize the

Page 1

Attachment B Cont.,

the possibility of serious harm created by these failures.

4, It is the duty of defendants Gary Junkers, Dr. Aurthur Campbell, John Doe 1, Debra Fitzgerald, and Valerie Langley to set policies that protect the health and safety of prisoners. While many policies may exist on paper, they are not enforced at the facility level. Plaintiff alleges these defendant officials have failed to respond reasonably to systemic health and safety problems and have failed to personally supervise and guide their subordinate facility-level officials in whose care they have entrusted the health and welfare of state prisoners. They have directly allowed a culture to exist and grow where facility-officials and line and primary medical officials recklessly disregard policy and procedures on a regular basis. Plaintiff believes, due to inadequate training of the many new personnel who have been elevated to higher positions – some in as little as 6 months, though they lack formal education or commensurate experience and training for such positions – many of the policies of

Page 2

NCDAC, or the are unknown to these officials, or they are not fully aware of the reasons for these policies, or the full ramifications of failing to follow set policy. The entire statewide medical system is disorganized and dysfunctional. Plaintiff asserts that medical records, grievances, past and present lawsuits, and internal memoranda have informed these defendant officials of systemic and gross deficiencies in staff, training, equipment and procedures and represent a continuing historical indifference. Plaintiff alleges that repeated examples of negligent acts will disclose a pattern of conduct proving deliberate indifference to the serious medical needs of the plaintiff, actual knowledge of those needs, and a failure to respond reasonably causing the plaintiff current and possible future injury physical and mental injury in the form of stroke, heart attack, hospitalization, a weakened heart muscle, fear of death and/or paralysis, — plaintiff was told at one point he had only 6 months to live — as well as continuing pain and suffering.

Page 3

Attachment B Cont.

5) Plaintiff Creel alleges that defendants Gary Sunkers, Dr. Aurthur Campbell, John Doe 1, Debra Fitzgerald, and Valerie Langley have failed completely in training properly facility-level and line staff. These deficiencies in training have allowed unnecessary delays to medical treatment and a failure to timely provide access to outside medical testing and specialist doctors. They have allowed a cultural failure to properly carry out medical orders — from both NCDAC doctors and specialist doctors alike — to continue unabated. Plaintiff alleges their in-attention and poor training, had have also allowed widespread destruction of and/or tampering with medical records.

6) Plaintiff alleges that defendants Gary Sunkers, Dr. Aurthur Campbell, John Doe 1, Debra Fitzgerald, and Valerie Langley, their denial of adequate medical care also amounts to exclusion from medical services — especially where medications are concerned — which is a program, service, or activity ed as defined by the Americans with Disabilities Act, and plaintiff alleges is

Page 4

Attachment B Cont.

constitutes a violation of the Americans with Disabilities Act.

## FACILITY LEVEL OFFICIALS

7) Facility Level Officials Mr. Jones, Dr. Lewis, Ms. Webb, Mr. Herring, Dr. Faulcon, Jane Doe 2, and John and Jane Does 3-8 are responsible for enforcing policy ~~created that directly affects line staff~~ created by upper level officials in order to provide adequate medical care, for setting policy that directly affects line staff, and also includes supervisory functions such as training, giving orders to, overseeing the work of, and discipline of line officials - Those lowest level officials who deal directly and personally with prisoners. Perhaps their greatest duty is to protect the health and safety of prisoners under their care. These facility level officials have direct participation in the day to day operations of the medical departments at PCI and MCI as well as the care of prisoners, of which Plaintiff Creel is one. In their failure to perform these duties sufficiently, they have personally helped to create and promote the historical deliberate indifference of the NCDAC medical

Page 5

Attachment B Cont.

system. Upper level policies are routinely ignored and are not enforced by these officials to the point that upper level policies exist only on paper. Due to their actions, inactions and omissions, they encourage and proliferate the culture of deliberate indifference which upper level officials have allowed to permeate the NCDAC medical system, indeed, helping to continue and exploit this culture. Repeated examples of ~~negligent~~ negligent acts, long-standing, pervasive, well-documented, and expressly noted failures in the medical system such as internal memoranda, grievances, medical records, etc., will support plaintiff's allegations of a pattern of unconstitutional and unlawful conduct for which there is seldom any discipline or correction. One can simply refer to prisoner grievances, where NCDAC almost never admits to any wrongdoing or having made mistakes, but rather allows defendant officials to "explain away" the allegations of the plaintiff. NCDAC's excuses and explanations are merely accepted as fact, with no opportunity for plaintiff to rebut or challenge those explanations. The sheer number of

Page 6

these grievances submitted by plaintiff and other prisoners should alert officials or at least give a strong suspicion of serious problems and deficiencies within the NCDAC medical system department which defendant officials are required to investigate. For defendant Officials to deny knowledge of systemic or departmental deficiencies would be incredible and show deliberate ignorance. Officials' failure to act is a pure example of "corrective inaction". Once alerted to these problems and deficiencies officials are required to respond reasonably. Their deliberate indifference and reckless disregard for plaintiff's serious medical needs and failure to act in a reasonable and responsible way creates unsafe conditions that pose an unreasonable risk of serious damage to plaintiff's future health and has already caused pain, suffering, and serious damage to plaintiff's current health. Defendant officials do not need to know the exact nature of the threats to plaintiff's health, nor do these threats need to be life-threatening in order to require action on the part of these defendant

Page 7

_Attachment B Cont._

officials. Plaintiff alleges that the failure of
the defendant officials named above represent
gross incompetence and are so excessive as to
shock the conscience or be intolerable to
fundamental fairness.

8) Plaintiff also alleges that defendants Mr. Jones,
Dr. Lewis, Ms Webb, and John and Jane Does 3-6
have allowed and cultivated a culture of delib-
erate indifference in which line officials
routinely assume first that a prisoner is faking
or malingering. This deliberate indifference
is pervasive and while faking does happen, due
to the few "bad apples", it remains that the
duty of line staff is to first respond reasonably
and assume that prisoner complaints are real,
and proceed with proper medical testing and
examination in order to establish whether there
is a serious medical need or if they are faking.

9) Plaintiff alleges that defendants Mr. Jones, Dr.
Lewis, Ms Webb and John and Jane Does 3-6 have
allowed systemic deficiencies in the procurement
and training of quality staff to reach dangerous
proportions. While some staff are taught proper
procedures, there is a severe lack of training

Page 8

Attachment B Cont.

in regards to NCDAC policy related to those
procedures. Supervision of line staff is poor.
Line staff routinely fail to execute prescribed
treatments properly. Medical equipment is not
maintained properly - plaintiff waited over 5
months for replacement of a non-functional oxy-
gen concentrator. Pharmacists and medicine
dispensers often fail to make necessary reorders
of medications, allowing dangerous gaps. Suff-
icient stock is not maintained to ensure a continuous
supply. Prescriptions are allowed to expire,
causing discontinuation of medications, forcing
prisoners to put in new sick calls - which take
unwarranted time and create co-pays for the
medical department. Sick calls themselves may
take days or weeks before a prisoner is seen
by a nurse, who may or may not refer to a
doctor. Chronically ill patients are frequently
charged co-pays for sick calls, though this
act is against policy unless the sick call is
about a new illness. It has become routine
to delay or even cancel appointments to outside
medical facilities or specialist doctors - which
can even interfere with their medical judgement -

Page 9

Attachment B Cont.

due to a shortage of transport staff. Delays in treatment and appointments are actual interference with prescribed treatment and orders of specialist doctors. These are not simply isolated instances. Plaintiff alleges these delays are medically unjust, and are clearly likely to make his medical problems worse or result in a lifelong handicap, permanent loss, or even death. Plaintiff alleges that medical records are also destroyed or tampered with in order to cover-up wrongful acts, inactions, or omissions. Medi-cations, equipment, and cardiologist appointments are extremely important and the lack or delay of these makes unnecessary suffering inevitable for plaintiff.

10) Plaintiff Creel alleges that his serious medical needs — and that of other chronically ill prisoners — require improved living conditions in the form of air conditioning. Chronically ill prisoners simply cannot withstand the high temperatures of summer without negative health effects. It would seem that defendant officials agree, in that of 4 operational dormitories in the camp, only the Chronic medical dormitory is air conditioned.

Page 10

Attachment B Cont.

Nevertheless, defendant Mr. Jones has been delib-
erately indifferent to this need as well. So far
this spring and summer, May-Aug of 2023, the
air conditioner has failed to operate correctly
for more than a day at a time, usually with several
days intervening correct operation. That it
works at all proves that defendant Jones
has tried and his repair staff has made some
effort to repair the equipment and alleviate the
problem. Unfortunately, after months of incorrect
operation, it would seem that defendant Jones
would either supervise the repair staff properly
and expedite repair, or admit his staff do not
have training or knowledge necessary to repair
the equipment by authorizing a private HVAC
service to repair the equipment.

11) Plaintiff Creel alleges that defendants Mr. Jones
and Dr. Lewis are deliberately indifferent to
plaintiff's serious medical needs by allowing,
even requiring forced exposure to inclement
weather. Plaintiff is required to receive certain
medications at the "medication window", which
is an outward facing window of the Medi-
cal department. Twice per day - 3 or 4 times

Page 11

_Attachment B Cont._

per day for many prisoners— plaintiff is required
to wait in long lines lasting at least 30 minutes,
often up to 1 hour out of doors in the weather.
Requests for a raincoat have been denied, and
while defendant officials claim that sufficient
clothing is supplied for cold weather— which
at times temperatures reach the low teens—
plaintiff disagrees. Due to his Congestive Heart
Failure and Atrial Fibrulation, it is necessary
that plaintiff is medicated with, among other
medicines, a blood thinner (Xeralto) which,
combined with poor circulation due to his weak
heart, causes plaintiff to be unable to withstand
colder temperatures as ordinary prisoners do.
Plaintiff is also susceptible to pneumonia, from
which in the past he has nearly died. The
cold temperatures cause unnecessary suffering
and extreme discomfort. For this reason
plaintiff is at times unwilling to wait for
necessary medications.

12) Plaintiff Cazel alleges that defendants Mr. Herring,
Dr. Faulcon, and Jane Doe 2 at MCI have
been deliberately indifferent to plaintiff's
serious medical needs, of which they had actual

_Page 12_

<u>Attachment B Cont.</u>

knowledge, by failing to properly supervise subordinate line officials correctly and allowing multiple disruptions in supplies of medications, most importantly Xeralto, which are direct interferences with prescribed treatment and specialist doctor's orders. This failure constitutes direct inaction on their part, causing unnecessary pain and suffering to plaintiff and has resulted in stroke, hospitalization, mental fear of paralyzation or death, as well as increased risk of stroke in the future.

      Line Staff

13) Plaintiff Creel alleges that line staff - defendants John and Jane Does 15-25 at PCI and John and Jane Does 16-35 at MCI - contribute to and promote unsafe conditions that pose an unecessary risk of serious damage to plaintiff's past, current, and future health. They enjoy the benefits of the historical indifference allowed Upper level and Facility officials and also expand upon it. They treat NCDAC policy as mere suggestions and routinely disregard important procedures and policies, refusing to do their jobs correctly and disregarding their hypocratic oaths by

Page 13

_Attachment B Cont._

by recklessly, intentionally, and directly delaying and denying treatment, providing grossly inadequate treatment, and other failures in providing plaintiff with adequate medical care. These allegations are not merely limited to the plaintiff in this case but represents the poor medical care given to all prisoners at PCI and MCI. These intentional denials and delays are medically unjust, and are clearly likely to make plaintiff's medical problems worse or result in a lifelong handicap or permant loss, and possibly even death. In fact, their deliberate indifference has already caused serious harm to plaintiff's current health and is likely to cause worsened conditions, injury and pain in the future, as well as create new health problems. Their reckless disregard and deliberate indifference to plaintiff's serious medical needs have resulted in stroke, hospitalization, a weakened heart muscle, fear of death or paralysis, and creates further risks so great and grave as to violate contemporary standards of decency. The State of North Carolina has instituted licensing for

Page 14

_Attachment B Cont._

medical personnel and these licenses require minimum levels of medical training that line officials must complete. Plaintiff alleges that due to the medical training and licensing required to fill their official positions, line officials obviously know of the substantial risks of serious harm created by their unconstitutional and unlawful actions, inactions and omissions. The line staff at PCI and MCI are either grossly incompetent for their positions or they are simply lazy and their actions, inactions, and omissions represent a willful disregard for plaintiff's obvious medical problems. Their job performance is so excessively poor as to shock the conscience or be intolerable to fundamental fairness and on many occasions, treatment is so cursory as to amount to no treatment at all.

14) Plaintiff alleges that a culture exists where line officials, defendants John and Jane Does 15-25, consistently and routinely assume that medical complaints from all but the sickest individuals, often chronically ill or disabled prisoners, are simply faking or malingering when filing sick calls, but most often for "emergency sick calls" which require

Page 15

*Attachment B Cont.*

medical attention. On many occasions their attitude is one of disbelief and disgust at actually having to respond to those calls for assistance. These officials are known to keep a tally of the number of calls in a given day as if these calls are deliberate impositions on their time. This culture violates the 8th Amendment requirement for adequate medical care and the Americans with Disabilities Act requirement of inclusion of disabled persons in the provision of medical services. It is the duty of the staff to respond reasonably to any request for medical care — emergency or not — in order to ensure that unreasonable risks to prisoners' future health and present health are avoided. These officials need not know the precise nature of a risk when they know that a risk exists and it is communicated to them, most often through sick calls, or in the case of an emergency, by phone or radio. Their failures to act reasonably often result in worsened medical conditions, new medical problems and unnecessary pain and suffering on the part of their "patient" prisoners. Indeed, in their general treatment (not medical) of prisoners, one

Page 16

<u>Attachment B Cont.</u>

would think their job was to help punish these
prisoners, rather than provide medical services.

5) Plaintiff alleges that defendants John and Jane
Does 26-35, line staff at Maury Correctional
Institute, have been deliberately indifferent
and have willfully disregarded plaintiff's serious
medical needs by their failures in supplying the
critical drug xealto, among others, regularly and
continuously, allowing dangerous delays and
gaps of time to lapse in the dispensation of these
medications. It is the duty of line-staff to ensure
medications are available and also that plaintiff
takes these medications as ordered and prescribed
by doctors and specialists. Officials have failed in
this regard by allowing supplies to "run out" and/or
allowing prescriptions for "chronic" medications to
expire, also failing to alert the pharmacy or a
doctor, which has led on one occasion to a
stroke and extended hospitalization during the
period of September 20, 2020 through October 25,
2020. Defendants still did not have this important
medication in supply when plaintiff returned from
the hospital and had to resort to an outside
pharmacy to fill the prescription. This failure

Page 17

Attachment B Cont.

has deprived plaintiff of minimum civilized mea-
sures of life's necessities. As a result of stroke,
plaintiff had experienced great fear of paralysis
recurring, which it did for a short time - plaintiff
experienced a paralyzed Left side after an earlier
stroke, luckily it proved to be temporary as
well. Specifically, line staff at MCI-defendants
John and Jane Does 26-35, have failed to carry
out doctors' and specialist doctors' orders, denied
and/or delayed medical treatment and have pro-
vided grossly inadequate care and treatment.
Plaintiff alleges he has suffered stroke, hospitalization,
and mental anguish as in the form of fear of
paralysis, death, as well as pain and suffering
as a result of defendants' actions, inactions,
and omissions.

16) Plaintiff alleges that John Doe 36, a defendant and
line staff member at PCI, has been deliberately
indifferent and has willfully disregarded
plaintiff's serious medical needs by sub-
stituting his own judgement for that of plaintiff's
specialist doctor, which has led to near death and
lengthy hospitalization during a period from
September, 2021 through October, 2021. The

Page 18

Attachment B Cont.

defendant decreased the dosage of plaintiff's lassix medication (furosemide), a critical medication, to an insufficient and ineffective level—thereby causing plaintiff's medical condition to worsen to near death. It was the duty of this official to follow the specialist doctor's orders and his failure has led to unnecessary pain and suffering on part of the plaintiff, and further constitutes inadequate treatment. No reason was given for the decrease in dosage. Other long term injury includes mental anguish in the form of fear of death, as plaintiff believes he was near death when finally sent to the emergency room. Plaintiff had to put in an emergency sick call and basically had to beg to be sent to the hospital emergency room.

17) In November, 2022, plaintiff Cecel complained—by voice and sick call form—to medical staff, including Dr. Lewis (vocally), that his portable oxygen concentrator was experiencing errors and was not operating properly. He was told on several occasions—including on January 6, 2022, by Dr. Lewis himself— that a new unit had been ordered. In February, 2023 plaintiff made a

Page 19

Attachment B Cont.

Request and also filed a grievance concerning
the oxygen concentrator. Dr Lewis, and several
in the medical department, including Ms. Webb,
said they knew nothing about plaintiff's oxygen
concentrator malfunctioning. Plaintiff made
the mistake of reporting to Ms. Webb that
at that moment, it was working properly - it
would work properly for short periods, intermittently.
Ms. Webb seized upon this statement and took
it to mean that there was nothing wrong with
the oxygen concentrator. Yet once again
plaintiff was assured a new one had been ordered.
Finally, on March 16, 2023, after 5 months of
struggling without oxygen regularly available,
plaintiff finally received a new oxygen concentrator.
Without oxygen it is very difficult and painful for
plaintiff when walking or doing other physical
activity required in daily life because his
weak heart cannot get enough oxygen to his
extremities when performing physical activity.
Plaintiff alleges that the oxygen concentrator
was not ordered when the medical department was
originally informed of problems, as he was
assured, but in fact was only ordered after

Page 20

Attachment B Cont.

plaintiff's grievance was submitted. A new
unit was received 7 days after the Step 3
response (final, from Raleigh) for plaintiff's
grievance was received through the mail.
Plaintiff Cecel alleges that this is yet another
intentional and direct denial, delay, and failure
to act by defendants Mr. Jones, Dr. Lewis,
Ms. Webb, John and Jane Does 15-25 that was
a violation of plaintiff's 8th Amendment rights to
adequate medical care.

18) Plaintiff alleges that defendents John and Jane
Does 15-25 failed to reschedule an appointment
to his specialist doctor after it had been can-
celled due to transport staff shortages. This
inaction was not merely an oversight, but rather
displays the disorganization and dysfunction
within the medical department at PCI. This
was an obvious ommission on the part of line
staff and violates plaintiff's 8th Amendment
rights to adequate medical care.

19) Plaintiff alleges that other denials of care by
defendants John and Jane Does 15-25 include
denial of medical aids such as wheelchair
seat cushions and gloves. Doctor's orders have

Page 21

Attachment B Cont.

have not been followed, notably in the prescription
of pediatric footwear, which plaintiff has not
been able to obtain since his arrival at PCI
in July, 2021. These and many other more minor
denials of adequate medical care taken in com-
bination also amount to violations of plaintiff's
8th Amendment rights to adequate medical care.

Conclusion

The NCDAC medical system, while it has many
different challenges, has failed to meet those challenges.
The U.S. Constitution, N.C. Constitution and N.C.
State law require that adequate medical care
be provided to prisoners. NCDAC has failed
completely to provide prisoners held within the
State prison system with adequate medical
care. There are innumerous instances of these
failures involving not only the plaintiff in this
complaint, but very many prisoners statewide.
Plaintiff believes systemic problems exist in every
"medical" camp under NCDAC's control, though
he personally has experience only with PCI and
MCI. Plaintiff Creed alleges that the entire
medical staff contributes to the denial of
adequate medical care in one way or another,

Page 22

## Attachment B Cont.

not with malice or negligence, but through sheer indifference (deliberate). These officials knew of plaintiff's serious medical needs — perhaps not his specifically in some cases — but there is a reason the medical department exists and they have knowledge of prisoners' serious medical needs throughout the state.

Page 23

## VI. ADMINISTRATIVE PROCEDURES

*WARNING: Prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions. 42 U.S.C. § 1997e(a). Your case may be dismissed if you have not exhausted your administrative remedies.*

Have you filed a grievance concerning the facts relating to this complaint?   ☒ Yes   ☐ No

If no, explain why not:

_____

_____

_____

_____

_____

Is the grievance process completed?   ☒ Yes   ☐ No

If no, explain why not:

_____

_____

_____

_____

_____

## VII. RELIEF

*State briefly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.*

Compensatory and punitive monetary damages.
Declatory damages.
Injunctive relief.
Costs of bringing this action.
Any other relief the Court sees fit to provide.

_____

_____

## VIII. PRISONER'S LITIGATION HISTORY

*The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in forma pauperis in federal court if that prisoner has "on three or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. §1915(g).*

Have you brought any other lawsuits in state or federal court while a prisoner?  ☒ Yes  ☐ No

If yes, how many?  *One*

Number each different lawsuit below and include the following:

- Name of case (including defendants' names), court, and docket number
- Nature of claim made
- How did it end? (For example, if it was dismissed, appealed, or is still pending, explain below.)

① *Creel v. Ruiz, District Court, Eastern District N.C.*
*Docket# 5:23-ct-03209-FL ; 42:1983 Prisoner*
*Civil Rights ; Awaiting initial assessment.*

## IX. PLAINTIFF'S DECLARATION AND WARNING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.**

*Each Plaintiff must sign and date the complaint and provide prison identification number and prison address.*

August 20, 2023
Dated

Plaintiff's Signature

Kennoth R. Cecel
Printed Name

1558805
Prison Identification #

P.O.Box 1058          Buegaw          NC     28425
Prison Address          City          State     Zip Code